UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PRINCE FEN GUIZHOU CUISINE
SERVICE LLC, et al.,

Plaintiffs,

v.

LANTINGXU ONE LLC, et al.,

Defendants.

Case No.  25-cv-04614-SI

**ORDER GRANTING DEFENDANTS'
LANTINGXU ONE LLC, CHEN, AND
ZHENG'S MOTION TO COMPEL
ARBITRATION AND STAYING CASE**

Re: Dkt. No. 54

Before the Court is the motion to compel arbitration filed by defendants Lantingxu One LLC, Yuzhu Chen ("Chen"), and Jing Zheng ("Zheng").  Dkt. No. 54 ("Mot.").  On June 26, 2026, the Court held a hearing on the motion.  Dkt. No. 80.  For the reasons stated below, the Court GRANTS defendants' Lantingxu One LLC, Chen, and Zheng's motion to compel arbitration.  The Court STAYS the case pending arbitration.

**BACKGROUND**

**I.    Factual Background**

The factual background below is drawn from the plaintiffs' second amended complaint. Dkt. No. 72 ("SAC").  Plaintiff Prince Fen Guizhou Cuisine Service LLC ("Prince Fen LLC") d/b/a/ "Mifen 101 幺零幺 (Yao Ling Yao)" a/k/a "Mifen 花溪王 (Hua Xi Yang)" operates a restaurant in Mountain View, California "offering authentic Guizhou-style Chinese cuisine, including Huaxi-style rice noodle dishes (花溪米粉)." *Id.* ¶¶ 13, 27.  Plaintiff Xiaoli Xue ("Xue") is the sole manager and a member of Prince Fen LLC.  *Id.*  ¶ 14.  According to the SAC, Prince Fen LLC was formed on June 23, 2020 by an Operating Agreement listing four members, including plaintiff Xue and defendant Yuzhu Chen ("Chen").  *Id.*  ¶¶ 24-25.  Plaintiffs allege that both "Xue and Chen were

United States District Court
Northern District of California

central to Prince Fen's formation and launch" and that "Chen acquired intimate knowledge of all aspects of Prince Fen's proprietary trade secrets and confidential business information." *Id.* ¶¶ 26, 29. Prince Fen LLC "launched its Mountain View restaurant under the name Mifen 101 花溪王 (Hua Xi Wang)" in November 2020. *Id.* ¶ 30. Between 2020 and 2022, Prince Fen LLC's members discussed the opening of additional 花溪王 (Hua Xi Wang) restaurants in the Bay Area. *Id.* ¶ 31.

Plaintiffs allege that in or around late 2020, Chen informed Prince Fen LLC's members that his wife, defendant Jing Zheng ("Zheng"), would hold his membership interest and shares in Prince Fen LLC. *Id.* ¶ 33. Plaintiffs allege that Chen "simultaneously served as a founding member and shareholder" of defendant Lantingxu One, LLC d/b/a Joyous Cuisine 花溪王 (Hua Xi Wang) ("Lantingxu One LLC"). *Id.* ¶¶ 2, 15. Through this "calculated scheme" defendant Chen "exploit[ed] his insider position at Prince Fen LLC" and "divert[ed] Prince Fen's business and customers to Lantingxu, a competing restaurant he controls operating just one block away." *Id.* ¶ 1. The complaint alleges, among other things, that Lantingxu One LLC members adopted Prince Fen's identical menu, incorporated 花溪王 (Hua Xi Wang) into its restaurant's name, conducted "a social media smear campaign" against Prince Fen, and "launched a coordinated campaign to pass itself off as Prince Fen." *Id.* ¶¶ 59-87.

On December 26, 2022, "[f]ollowing various changes in membership," plaintiff Xue, defendant Zheng, and another Prince Fen LLC member signed a 2022 Operating Agreement, which identifies defendant Chen as the "claimed sole owner" of certain recipes and the brand 贵州花溪王 (Guizhou Hua Xi Wang), and provides that Chen granted Prince Fen LLC a license to operate using those recipes and that brand. *Id.* ¶¶ 34-35; *see also* Dkt. No. 54-1 ("Ryan Decl."), Ex. B (2022 Operating Agreement) § 2.8 & 20-23 (ECF pagination). The 2022 Operating Agreement also contains "an explicit non-compete clause binding on all members," which prohibits any member from operating "any other noodle or mifen food establishment similar to those of the Company within the [San] Francisco Bay Area." *Id.* ¶¶ 37-38; 2022 Operating Agreement § 4.1. Further, Section 4.4 of the Operating Agreement "obligates all members to protect Prince Fen's trade secrets, including its customer lists, recipes, processes, methods, and technical information, and prohibits any member from disclosing such information without the written consent of all other members."

2

*Id.* ¶ 39, 2022 Operating Agreement § 4.4.

The 2022 Operating Agreement also contains an arbitration provision, which provides in relevant part:

"[a]ny claims or disputes arising out of this Agreement which cannot be resolved amicably between the parties shall be settled by submission to the American Arbitration Association (the "*AAA*") for binding arbitration to be conducted in San Francisco, California.  The arbitration shall be conducted by one arbitrator mutually agreed upon by the parties, or, if the parties cannot agree, chosen in accordance with the AAA rules, and resolution of the dispute by such an arbitrator shall be binding and conclusive upon the parties."

2022 Operating Agreement § 8.2.  The 2022 Operating Agreement also contains a separate choice of law provision which provides, in relevant part: "This agreement shall be governed for all purposes by the laws of the State of California applicable to agreements executed and to be wholly performed in California."  *Id.* § 8.5.

## II.    Procedural Background

Plaintiff Prince Fen LLC initially filed suit solely against defendant Lantingxu One LLC in this Court on May 31, 2025, alleging six federal and state trademark infringement and unfair competition claims.  Dkt. No. 1.  Since that time, this case has expanded considerably.  Plaintiffs'[1] operative complaint, filed June 2, 2026, brings fourteen causes of action ("COA") against defendants Lantingxu One LLC, Chen, Zheng, four alleged owners and/ or members of Lantingxu One LLC (Chaoxing Zhou, Ning Zhang, Junhong Zhou, and Meijing Tian), and DOES 1-10, investors and members of Lantingxu One LLC: COA I (False Designation of Origin under 15 U.S.C. § 1125(a)); COA II (False Advertising under 15 U.S.C. § 1125(a)); COA III (Trade Dress Infringement under 15 U.S.C. 1125(a)); COA IV (Trademark Infringement under 15 U.S.C. § 1125(a)); COA V (Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") under 15 U.S.C. § 1962(c)), COA VI (Trade Secret Misappropriation under 18 U.S.C § 1836); COA VII (Trade Secret Misappropriation under Cal. Civ. Code § 3426 *et seq.*); COA VIII (Breach of Fiduciary Duty and the Covenant of Good Faith and Fair Dealing); COA IX (Breach of Contract -

---

[1] Plaintiffs are now Prince Fen LLC and Xue.

2022 Operating Agreement); COA X (Unfair Competition Cal. Bus. & Prof. Code § 17200); COA XI (Intentional Interference with Prospective Economic Advantage); COA XII (Fraudulent Inducement); COA XIII (Civil Conspiracy); and COA XIV (Libel/Defamation).  SAC ¶¶ 93-210.

As background, on July 13, 2025, plaintiff requested entry of default after defendant failed to timely appear.  Dkt. No. 14.  The next day, the Court entered default (Dkt. No. 15), and on August 8, 2025, plaintiff filed a motion for default judgment (Dkt. No. 16).  On August 18, 2025, defendant filed a notice informing the Court that it received a copy of the complaint on August 11, 2025 and intended to oppose plaintiff's motion for default judgment.  Dkt. No. 19.  After receiving full briefing from both sides and hearing oral argument on September 19, 2025, the Court set aside default and set a deadline for defendant to file a responsive pleading.  Dkt. No. 26.  On October 3, 2025, defendant answered the complaint.  Dkt. No. 30.  That same day, defendant Lantingxu One LLC and counter-claimant Chen filed four counterclaims against Prince Fen LLC[2], which plaintiff answered on December 18, 2025.  Dkt. Nos. 31, 36.

On July 3, 2025, Xue sued Chen personally in the Santa Clara County Superior Court alleging four related claims, *Xue v. Chen*, 25CV469947 ("First State Action").  On September 8, 2025, Zheng and Chen (defendants in this case) filed suit against Xue and Prince Fen LLC (plaintiffs in this case) and DOES 1-10 in Superior Court for breach of fiduciary duty, breach of contract, unfair competition, and accounting. *Zheng and Chen v. Prince Fen and Xue*, 25CV474500 ("Second State Action").  On October 23, 2025, Prince Fen LLC and Xue filed a motion to compel arbitration in the Second State Action, which Zheng and Chen did not oppose.  *See* Ryan Decl. ¶ 5, Ex. A.

Parties discussed consolidating the present case with the related state court cases with the Court at January 23 and January 30, 2026 case management conferences.  Dkt. Nos. 39, 42. Following the January 30 case management conference and leading up to an unsuccessful February 18, 2026 settlement conference, the Court stayed this case until April 3, 2026.  Dkt. No. 42.  On March 25, 2026, parties stipulated to dismiss their respective pending state court actions and

---

[2] The 2022 Operating Agreement was attached as Exhibit A to the counterclaims.  Dkt. No. 31, Ex. A.

continue the April 3, 2026 case management conference. Dkt. No. 51. On March 30, 2026, both state actions were dismissed without prejudice. On April 8, 2026, Prince Fen filed an amended complaint in this Court adding Xue as a plaintiff and Chen, Zheng, four alleged owners and/or members of Lantingxu (Chaoxing Zhou, Ning Zhang, Junhong Zhou, and Meijing Tian), and DOES 1-10, investors and members of Lantingxu as additional defendants. Dkt. No. 52 ("FAC").

Defendants filed the present motion to compel arbitration on April 22, 2026. Mot.[3] Plaintiffs opposed on May 6, 2026, and defendants filed their reply brief on May 10, 2026. Dkt. Nos. 65, 68. The Court heard oral argument on June 26, 2026.

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. When a motion to compel arbitration is filed, a "court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue ... shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* "The court's role under the Act is ... limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the answer to both questions is

---

[3] In addition, on April 22, 2026, defendants filed a motion to dismiss the FAC but requested that the Court rule on the motion to compel arbitration before the motion to dismiss. Dkt. No. 55. Following stipulations granted by the Court, defendants filed second amended counterclaims (Dkt. No. 69), and plaintiffs filed the SAC (Dkt. No. 72). As a result, defendants' motion to dismiss the FAC is now moot and, as parties acknowledged at the hearing, the Court considers this motion as it pertains to the SAC. Defendants filed a motion to dismiss the SAC on June 22, 2026. Dkt. No. 75.

yes, the Court must enforce the agreement. *Id.* However, where the parties have "clearly and unmistakably" delegated questions regarding arbitrability to the arbitrator, the Court need not reach the second inquiry. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).

### DISCUSSION

Neither party disputes that there is a valid arbitration agreement and that the agreement covers at least some of the claims at issue here. Plaintiffs argue, however, that their claims are not arbitrable because California law rather than the FAA applies to the arbitration clause, and that under California law the Court should deny the motion because the arbitration clause does not bind all of the defendants in this case. Opp'n at 2-3. Further, plaintiffs argue that the Court should deny the motion because defendants have waived their right arbitration. *Id.* at 1-2.

### I.    Judicial Notice

Defendants request that the Court take judicial notice of two exhibits filed in connection with defendants' motion to compel arbitration under Rule 201 of the Federal Rules of Evidence. Dkt. No. 54-2. Exhibit A is the motion to compel arbitration filed by plaintiff Xue in the Second State Action on October 23, 2025. Ryan Decl., Ex. A. Exhibit B is the 2022 Operating Agreement, dated December 26, 2022, and signed by plaintiff Xue on behalf of plaintiff Prince Fen LLC. Ryan Decl, Ex. B. The Court takes judicial notice of each document, finding the 2022 Operating Agreement incorporated by reference into plaintiffs' complaint and the motion to compel arbitration a public record of a California state court not subject to reasonable dispute.

### II.    Application of FAA

The parties dispute whether the arbitration clause in the 2022 Operating Agreement is governed by the FAA or the California Arbitration Act ("CAA"). *See* 2022 Operating Agreement § 8.2. Plaintiffs argue that Section 1281.2 of the CAA should apply instead of the FAA because defendants fail to establish a nexus to interstate commerce required to invoke the FAA and because the 2022 Operating Agreement includes a general choice-of-law provision specifying California law

6

applies. Opp'n at 8-9. Plaintiffs further argue that the Court should exercise its "discretion" to deny arbitration under Section 1281.2 (c) of the CAA, where there is a party to the litigation not bound by the arbitration agreement and the possibility of conflicting rulings on a common issue of law or fact. *Id.* at 9-10; *see* Cal. Code. Civ. P § 1281.2 (c).

As a threshold matter, the Court must determine if the FAA applies. *See New Prime Inc. v. Oliveira,* 586 U.S. 105, 111-12, 139 S. Ct. 532, 202 L. Ed. 2d 536 (2019) ("[A] court should decide for itself" whether the FAA applies because "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2."). The FAA applies to "a contract evidencing a transaction involving commerce," and provides that any arbitration agreement within its scope "shall be valid, irrevocable and enforceable[.]" 9 U.S.C. § 2. Under the FAA, commerce is defined as "commerce among the several States or with foreign nations." *Id.* § 1. The Supreme Court has interpreted 9 U.S.C. § 2 broadly extending the FAA to reach the full scope of Congress's Commerce Clause power. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 268, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). Because FAA coverage is broad, the arbitrability inquiry is typically phrased as "whether a valid agreement to arbitrate exists and, if it does, whether the agreement encompasses the dispute at issue." *See Chiron Corp.*, 207 F.3d at 1130.

"When an agreement falls within the purview of the FAA, there is a 'strong default presumption ... that the FAA, not state law, supplies the rules for arbitration.'" *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002)). "To overcome that presumption, parties to an arbitration agreement must evidence a 'clear intent' to incorporate state law rules for arbitration." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (quoting *Sovak*, 280 F.3d at 1269).

A general choice-of-law clause in a contract is insufficient to overcome the presumption that the FAA governs. *Johnson*, 614 F.3d at 1066. Even general references to California law in an arbitration provision are, on their own, insufficient to overcome the presumption. *See Fid. Fed. Bank*, 386 F.3d at 1312 (applying FAA where arbitration clause required "arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association").

United States District Court
Northern District of California

Instead, "the parties must explicitly state their intent to incorporate California law *as it relates to arbitration*." *ValueSelling Assocs., LLC v. Temple*, No. 09–CV–1493–JM (MDD), 2011 WL 2532560, at \*2 (S.D. Cal. June 23, 2011), *aff'd*, 520 F. App'x 593 (9th Cir. 2013).

Here, the Court finds the 2022 Operating Agreement to be a commercial agreement that falls within the FAA's broad scope. The Court is unpersuaded that the general choice-of-law provision in the 2022 Operating Agreement, providing that "[t]his agreement shall be governed for all purposes by the laws of the State of California" is sufficient to overcome the presumption that the FAA applies. *See* 2022 Operating Agreement § 8.5. The arbitration clause itself has no language at all suggesting that California law applies to the arbitration provision. *See id.* § 8.2. Plaintiffs rely only on *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 479 (1989) to support their argument that Section 8.5's choice of law clause is sufficient to invoke the CAA, and the Court does not find the case to stand for the proposition that a general choice of law clause necessitates that the CAA should govern an arbitration clause. Plaintiffs identify no other authority to support this proposition. Further, as defendants point out in their reply brief, plaintiffs' federal claims[4] must be dismissed if plaintiffs cannot establish a nexus to interstate commerce, and plaintiffs' complaint plainly alleges such nexus exists. *See* Reply at 8; SAC ¶¶ 94, 95, 117, 134, 141. Accordingly, the Court finds that the FAA rather than the CAA applies.

### III.    Arbitrability of Claims

Having concluded the FAA applies and a valid arbitration agreement exists, the Court must determine "whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130.[5] Courts are directed to resolve any "ambiguities as to the scope of the arbitration clause itself

---

[4] These are COA I (False Designation of Origin under 15 U.S.C. § 1125(a)); COA II (False Advertising under 15 U.S.C. § 1125(a)); COA III (Trade Dress Infringement under 15 U.S.C. 1125(a)); COA IV (Trademark Infringement under 15 U.S.C. § 1125(a)); COA V (Violation of Racketeer Influenced and Corrupt Organizations Act ("RICO") under 15 U.S.C. § 1962(c)), and COA VI (Trade Secret Misappropriation under 18 U.S.C § 1836).

[5] Neither party raised the issue of whether the Court or the arbitrator should decide the arbitrability of plaintiffs' claims. The question of "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy . . . [is] for judicial determination

. . . in favor of arbitration." *Volt Info. Sciences, Inc.*, 489 U.S. at 476.

In their motion and at the hearing, defendants argue that the arbitration clause within the 2022 Operating Agreement encompasses all of plaintiffs' fourteen causes of action. Mot. at 6. Plaintiffs' opposition does not appear to dispute that the 2022 Operating Agreement encompasses some of the disputes at issue here. *See, generally*, Opp'n. Moreover, plaintiffs filed their own motion to compel arbitration in the related Second State Action based on the same language in the 2022 Operating Agreement. *See* Dkt. No. 54-1, Ex. B. However, at the hearing, counsel for plaintiffs clarified plaintiffs' position that only COA VIII (Breach of Fiduciary Duty and the Covenant of Good Faith and Fair Dealing) and COA IX (Breach of Contract - 2022 Operating Agreement) are covered by the 2022 Operating Agreement.

The Court has reviewed the SAC and the 2022 Operating Agreement, and concludes that the arbitration clause encompasses each of plaintiffs' fourteen claims. The arbitration clause applies to "any claims or disputes arising out of [the 2022 Operating Agreement]." 2022 Operating Agreement § 8.2 . Section 2.8 of the 2022 Operating Agreement, identifies defendant Chen as the "claimed sole owner" of certain recipes and the brand Guizhou Hua Xi Wang, and provides that Chen granted Prince Fen LLC a license to operate using those recipes and that brand. SAC ¶¶ 33-35; 2022 Operating Agreement § 2.8. All the claims in the SAC primarily relate to the disputed ownership of the brand 贵州花溪王 Guizhou Hua Xi Wang and to use of the name 花溪王 (Hua Xi Wang)

---

unless the parties clearly and unmistakably provide otherwise." *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1065 (9th Cir. 2020). The Ninth Circuit has held that "at least in a contract between sophisticated parties, 'incorporation of the AAA Rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability.'" *Id.* at 1068 (quoting *Brennan*, 796 F.3d at 1130). However, the Ninth Circuit has also made clear that it has "never held that a mere reference to the AAA shows clear and unmistakable intent to delegate a gateway issue to an arbitrator." *Id.* Here, the arbitration provision requires that any claims or disputes arising out of the 2022 Operating Agreement be submitted to the American Arbitration Association (the "AAA") and provides that "if the parties cannot agree" on an arbitrator, an arbitrator shall be "chosen in accordance with the AAA rules." While the arbitration clause references the AAA rules, that reference is limited to the selection of an arbitrator and does not amount to a blanket incorporation of the AAA rules into the entire agreement. Having identified no language that "clearly and unmistakably" indicates that the Court is not to decide the issue of arbitrability, the Court proceeds to discuss which of plaintiffs' claims are arbitrable.

United States District Court
Northern District of California

and arise out of the 2022 Operating Agreement.  The 2022 Operating Agreement also includes noncompetition and trade secret clauses, relevant to many of the claims.  *Id.*  §§ 4.1, 4.2, 4.3.

Therefore, the Court determines the arbitration provision within the 2022 Operating Agreement encompasses all of plaintiffs' claims.

## IV.    Waiver

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "teaches that there is no 'strong federal policy favoring enforcement of arbitration agreements.' . . . The federal policy is to treat arbitration agreements like other contracts." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) (citation omitted).  As such, *Morgan* "has removed prejudice to the non-moving party as an element of waiver in the context of arbitration contracts." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 460 (9th Cir. 2023).  In the Ninth Circuit, therefore, "a party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Id.* For the second prong, courts "consider the totality of the parties' actions." *Id.* at 471 (citations omitted).  "Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer 'heavy.'  Instead, the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong*, 59 F.4th at 1014-15.

Defendants do not appear to dispute knowledge of the right to arbitrate, at least as of October 23, 2025.  *See* Mot. at 8, Ryan Decl. ¶ 5 ("Defendants became aware of the arbitration provision by reviewing the motion to compel arbitration filed by Plaintiffs [in the Second State Action] on October 23, 2025.").  The question, therefore, is whether plaintiffs have shown that defendants waived their right by acting inconsistently with the right to arbitrate.  Plaintiffs argue three of defendants' actions were inconsistent with the right to arbitrate: (1) defendants Chen and Zheng filing the Second State Action in Santa Clara County Superior Court on September 8, 2025, with the 2022 Operating Agreement attached to the complaint, (2) filing counterclaims in this Court, and (3) affirmatively asking this Court for relief with a jury demand.  Opp'n. at 2.

Defendants argue that they have consistently taken actions to avoid litigation.  Mot. at 8-9.

10

Plaintiffs initiated this action, as well as the First State Action. Defendants argue that they only filed the Second State Action on September 8, 2025 to defend against plaintiffs' claims, after appearing late and missing the deadline to file counterclaims. Mot. at 11; Ryan Decl. ¶ 3-5. When plaintiffs in this action filed a motion to compel arbitration in the Second State Action on October 23, 2025, defendants did not oppose the motion. *Id.* Defendants argue they did not initiate any discovery in either of the state actions or in this action. *Id.* ¶¶ 3-4; Reply at 4. Defendants informed this Court that they intended to move to compel arbitration in January 2026. *Id.* ¶ 6; *see* Dkt. No. 37 ("Defendant and Counter-claimant believes that it is more efficient if the parties dismiss all three cases and conduct one single arbitration to resolve all disputes."). Defendants argue that they waited to file their motion to compel arbitration until April 22, 2026 in the interest of efficiency because parties were pursuing settlement and consolidation of the three cases. Reply at 3.

The Court finds that defendants' actions have not been inconsistent with the right to arbitrate. The cases plaintiffs cite to argue that defendants' filing of a complaint in state court and requesting a jury trial constitute waiver are inapposite, because, in each of those cases the court was considering whether a plaintiff who brought the action and later moved to compel arbitration had waived its right to arbitration. *See United Computer Sys., Inc. v. AT &T Corp.,* 298 F. 3d 756, 765 (9th Cir. 2002); *Morgan Stanley & Co. LLC v. Couch*, 134 F. Supp 3d 1215, 1230-31 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016); *ConWest Res., Inc. v. Playtime Novelties, Inc.*, No. C 06-5304SBA, 2007 WL 1288349, at *4-5 (N.D. Cal. May 1, 2007); *Freaner v. Valle*, 966 F. Supp. 2d 1068, 1086 (S.D. Cal. 2013); *Riverside Publ'g Co. v. Mercer Publ'g LLC*, 829 F. Supp. 2d 1017, 1020-21 (W.D. Wash. 2011). Conversely, here it is defendants moving to compel arbitration in a case they did not choose to bring. While it may have been more efficient for defendants to pursue arbitration from the outset and preferable for defendants' counsel to seek leave to file counterclaims in the First State Action, instead of filing the Second State Action, "the totality of the parties' actions" does not suggest waiver. *See Hill*, 59 F.4th at 471. The Court has decided no substantive motions in this case and the case was stayed for more than two months due to parties' unsuccessful attempts to settle and consolidate the three cases.

In sum, the Court finds that defendants have not waived their right to arbitration.

United States District Court
Northern District of California

United States District Court
Northern District of California

## V.       Stay of Case

Moving defendants Lantingxu One LLC, Chen, and Zheng seek dismissal of the action as for themselves and a stay of the action pending the outcome of arbitration as for the remaining defendants.  Mot. at 9; Reply at 10.

Section 3 of the FAA provides that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3.  In *Smith v. Spizzirri*, the Supreme Court held that "the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."  601 U.S. 472, 475-76 (2024).  The Supreme Court's decision in *Smith* "eliminated an exception long-recognized by the Ninth Circuit that notwithstanding Section 3, a court retains jurisdiction to dismiss (rather than stay) an action in which [all] claims are compelled to arbitration."  *Theodore v. Am. Express Nat'l Bank*, No. 23-CV-03710-AMO, 2024 WL 4165274 (N.D. Cal. Aug. 27, 2024) (citing *Smith*, 601 U.S. 472 at 474, 478).

Therefore, the Court DENIES defendants' request for dismissal and STAYS the remainder of the case.  The Court finds a stay pending the outcome of arbitration is also appropriate as to the other defendants because the moving defendants are central to the disputes alleged in the SAC.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to compel arbitration.  The Court hereby STAYS the remainder of the action pending arbitration. The Clerk shall administratively close the case.

**IT IS SO ORDERED**.

Dated:  July 5, 2026

_____
SUSAN ILLSTON
United States District Judge